**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*


**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------x

VINCENT RIEDEL and YANG SHEN,
*on behalf of themselves and others similarly situated*,

                Plaintiffs,      **CLASS ACTION COMPLAINT**

      - against -      Case No.

CHURCH & DWIGHT CO., INC.,      **JURY TRIAL DEMANDED**

              Defendant.

--------------------------------------------------------x

       Plaintiffs Vincent Riedel and Yang Shen, (collectively, "Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, as and for their Complaint against the Defendant, allege the following based upon personal knowledge as to themselves and their own action, and, as to all other matters, respectfully allege, upon information and belief, as follows (Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

<u>**NATURE OF THE ACTION**</u>

       1.    This action seeks redress for the unfair, deceptive and otherwise improper business practices that Defendant, Church & Dwight Co., Inc. (hereinafter, "Church & Dwight" or "Defendant"), engages in with respect to the packaging of its Arm & Hammer™ Liquid Laundry Detergent products. The liquid detergent products are packaged in bottles of various sizes and quantities.

2.      Each of the Arm & Hammer™ liquid detergent products (hereinafter, the "Products" as defined in Paragraph 19 below) (i) contain the same or similar product packaging, as described herein, and (ii) are packaged in containers made, formed or filled as to be misleading, as described herein.

3.      Defendant violated statutes enacted in New York and New Jersey that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.* and New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.*

4.      The Products are packaged in non-transparent plastic bottles. The size of the bottles in comparison to the volume of detergent contained therein make it appear as if the consumer is buying more than what is actually being sold. By increasing the size of the Product packaging, Defendant maximized the shelf presence of its Products over competitor products.

5.      Plaintiffs and Class members viewed Defendant's misleading Product packaging, reasonably relied in substantial part on the representations and were thereby deceived in deciding to purchase the Products for a premium price.

6.      Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not for resale any of the Products.

7.      Defendant has deceived Plaintiffs and other consumers nationwide by mischaracterizing the volume of the Products. Defendant has been unjustly enriched as a result of selling the Products in disproportionately large containers compared to the volume of the actual product contained therein. Through these unfair and deceptive practices, Defendant has

collected millions of dollars from the sale of the Products that they would not have otherwise earned. Plaintiffs bring this action to stop Defendant's misleading practice.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B) whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendant, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

9.      The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

10.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

11.     This court has personal jurisdiction over Defendant because their Products are advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District. Plaintiff Riedel is a citizen of New York, resides in this District, and purchased the Products in

this District. Moreover, Defendant distributed, advertised, promoted, and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

### New York Plaintiff

13.     Plaintiff Vincent Riedel is, and at all relevant times hereto has been, a citizen of the State of New York and resides in Suffolk County. Plaintiff Riedel has purchased the Products for personal use within the State of New York. Plaintiff Riedel purchased the Products from convenience stores, supermarkets, and pharmacies located throughout New York State. Within the past year, Plaintiff Riedel has also purchased the Products from online retailers such as Amazon.com. In or around December 2015, Plaintiff Riedel purchased the Arm & Hammer™ 61.25 fluid ounce Product for $16.00. Plaintiff Riedel purchased Arm & Hammer™ liquid detergents relying on the size of the packaging. At the time of purchase, Plaintiff Riedel did not know that the containers were not filled to capacity, exclusive of functional elements. Plaintiff Riedel would not have purchased Arm & Hammer™ detergent, or would have paid significantly less for the Products, had she known the containers were made, formed or filled as to be misleading. Plaintiff Riedel was reasonably misled by Defendant's oversized containers because he expected the size of the containers to accurately reflect the volume of detergent contained therein. Plaintiff Riedel suffered injury in fact and lost money as a result of Defendant's deceptive, false, and misleading practice as described herein. However, he would still be willing to purchase the Products, absent the price premium, so long as Defendant engages in corrective packaging and/or provides a disclaimer regarding product fill. The Products purchased by Plaintiff Riedel are substantially similar to, and are filled in a similarly misleading manner as all the other Products; and she has standing to represent purchasers of all Products.

**New Jersey Plaintiff**

14.     Plaintiff Yang Shen is, and at all relevant times hereto has been, a citizen of the State of New Jersey and resides in Essex County. Plaintiff Shen has purchased the Products for personal use within the State of New Jersey. Plaintiff Shen purchased the Products from convenience stores, supermarkets, and pharmacies located throughout the State of New Jersey, including but not limited to Costco Wholesale and Pioneer Supermarket. Within the past two years, Plaintiff Shen purchased the 250 fluid ounce Arm & Hammer™ Liquid Laundry Detergent Product for approximately $15.79 (or more) in Union, New Jersey. Plaintiff Shen purchased Arm & Hammer™ liquid detergents relying on the size of the packaging. At the time of purchase, Plaintiff Shen did not know that the containers were not filled to capacity, exclusive of functional elements. Plaintiff Shen would not have purchased Arm & Hammer™ detergent, or would have paid significantly less for the Products, had she known the containers were made, formed or filled as to be misleading. Plaintiff Shen was reasonably misled by Defendant's oversized containers because she expected the size of the containers to accurately reflect the volume of detergent contained therein. Plaintiff Shen suffered injury in fact and lost money as a result of Defendant's deceptive, false, and misleading practice as described herein. However, she would still be willing to purchase the Products, absent the price premium, so long as Defendant engages in corrective packaging and/or provide a disclaimer regarding product fill. The Products purchased by Plaintiff Shen are substantially similar to, and are filled in a similarly misleading manner as all the other Products; and she has standing to represent purchasers of all Products.

**Defendant**

15.     Defendant Church & Dwight Co., Inc. is a corporation organized under the laws of Delaware with its headquarters at Princeton South Corporate Center, 500 Charles Ewing

Boulevard, Ewing, NJ 08628 and an agent for service of process at National Registered Agents, Inc., 160 Greentree Dr. Ste. 101, Dover, Delaware 19904. While Defendant manufactures, markets, sells and distributes Arm & Hammer™ liquid laundry detergents throughout the United States, all critical decisions made with respect to the Products, including all decisions concerning the marketing and advertising of the Products, were made by Church & Dwight employees located in New Jersey. Church & Dwight sold the Products through retail stores, the Internet, and also through television and other advertisements, all of which led consumers to purchase the Products. Church & Dwight knew, or should have known, that the volume representations it made regarding the Products were false and misleading at the time that it began distributing the Products in the United States market.

**FACTUAL ALLEGATIONS**

**Defendant's Products Are Misleading**

16.     Church & Dwight directs and controls all significant aspects of the sale of its well-known household brand name Arm & Hammer™, including the manufacturing, marketing, packaging, distribution, and pricing. Church & Dwight products are sold at thousands of stores throughout the United States and on consumer retail websites. The Products that are the subject of this Complaint are sold at most supermarket chains, convenience stores and major retail outlets, including but not limited to Wal-Mart, Costco, CVS, Walgreens, Target and Amazon.com.

17.     Defendant has routinely employed deceptive packaging containing excessive empty space to mislead customers into believing that they were receiving more laundry detergent than they actually were.

18.     Plaintiffs were (and a consumer would reasonably be) misled about the volume of the product contained within the container in comparison to the size of the Products' packaging. Plaintiffs and Class members relied on the size of the bottle as indicative of the volume of the laundry detergent contained therein. The size of the bottle in relation to the actual volume of the tablets contained therein was intended to mislead the consumer into believing the consumer was getting more of the Product than what was actually in the container.

19.     Defendant sold Plaintiffs and Class members, and continue to sell consumers the following Arm & Hammer™ products in misleading containers with at least 14% non-functional empty space (together, the "Products"):

 i. Arm & Hammer™ Liquid Laundry Detergent– 43.75 Fl. Oz.
 ii. Arm & Hammer™ Liquid Laundry Detergent– 61.25 Fl. Oz.
 iii. Arm & Hammer™ Liquid Laundry Detergent– 82.25 Fl. Oz.
 iv. Arm & Hammer™ Liquid Laundry Detergent– 131.25 Fl. Oz.

20.     Pictures of sample Products and packaging are shown in **EXHIBIT A**, with horizontal lines indicating the approximate height of the detergent in the respective bottles.

21.     Visual estimates in **EXHIBIT A** show that the contents of the Products do not fill up the entirety of the dispensing bottles. In fact, each bottle contains significant excessive empty space of up to 18% in violation of state laws against deceptive acts and practices.

22.     The size of the bottles in relation to the volume of the liquid detergent actually contained therein gives the false impression that the consumer is buying more than they are actually receiving.

23.     Plaintiffs and the members of the Class relied on the sizes of the Arm & Hammer™ detergent bottles to believe that the entire volume of the containers would be filled to capacity with liquid detergent, exclusive of functional elements such as reasonable headspace.

**Plaintiffs Were Injured as a Result of Defendant's Misleading and Deceptive Conduct**

24.     Defendant's Product packaging as alleged herein is deceptive and misleading and was designed to increase sales of the Products. By increasing the size of the bottles in which the Arm & Hammer™ detergents are contained, Defendant maximized the shelf presence of its Products over competitor products. Defendant's misrepresentations are part of its systematic Product packaging practice. There is no practical reason to package the Products in over-sized containers other than to mislead consumers as to the actual volume of the Products being purchased.

25.     As a result of Defendant's deception, consumers – including Plaintiffs and members of the proposed Class – have purchased Products packaged misleadingly for a premium price over other detergent products sold on the market.

26.     Defendant's misleading marketing and advertising campaign is buttressed by the incorporation of the integrated pour spout in their entire range of Products. As an example, photographs of the Arm & Hammer™ 43.75 Fluid Ounce Product are shown below:





27.    A reasonable consumer would sensibly deduce and expect from the staunch color differentiation between the screw-in measuring cap and the yellow body container that the liquid detergent within the Product fills up the entire container. As evident from the photographs, the bottom of the integrated pour spout ends well below the rim required for the screw-in measuring cap. There is simply no reason, even with the spigot apparatus, why the liquid detergent could not be filled to the top of the bottle.

28.    There is no practical reason for the Products to be packaged in over-sized containers other than to mislead consumers as to the actual volume of the Products being purchased by consumers.

29. Defendant's Products are misbranded under consumer protection laws of New York and New Jersey because it misled Plaintiffs and Class members about the volume of the Products in comparison to the size of the Products' packaging. The size of the containers in relation to the actual amount of the Products contained therein gives the false impression that the consumer is buying more than they are actually receiving.

30. The types of misrepresentations made above would be considered by a reasonable consumer when deciding to purchase the Products. A reasonable person would attach importance to whether Defendant's Products are "misbranded," *i.e.,* not legally salable, or capable of legal possession, and/or contain excessive empty space.

31. Plaintiffs and Class members did not know, and had no reason to know, that the Products were packaged in containers made, formed or filled as to be misleading.

32. Defendant's Product packaging was a material factor in Plaintiffs' and Class members' decisions to purchase the Products. Based on Defendant's Product packaging, Plaintiffs and Class members believed that they were getting more of the Products than was actually being sold. Had Plaintiffs and Class members known Defendant's Products were packaged in over-sized containers with excessive empty space, they would not have bought the Products.

33. At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were packaged in containers made, formed or filled as to be misleading as set forth herein, and would not have bought the Products had they known the truth about them.

34. Defendant has reaped enormous profits from its false, misleading and deceptive marketing and sale of the Products.

35.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased the Products to stop the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. Plaintiffs allege negligent misrepresentation, unjust enrichment and violations of consumer protection laws of New York and New Jersey.

36.     Plaintiffs and Class members paid the full price of the Products and received less of what Defendant represented they would be getting due to the excessive empty space in the over-sized containers. In order for Plaintiffs and Class members to be made whole, Plaintiffs and Class members would have to receive enough of the liquid detergent so that there is no excessive empty space or have paid less for the Products. In the alternative, Plaintiffs and members of the Class are damaged by the percentage of empty space in the containers relative to the purchase price they paid.

37.     Through this action, Plaintiffs seek injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs and all other relief available to the Class as a result of Defendant's unlawful conduct.

## CLASS ACTION ALLEGATIONS

*The Nationwide Class*

38.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Nationwide Class"):

> All persons or entities in the United States who made retail
> purchases of Products during the applicable limitations period,
> and/or such subclasses as the Court may deem appropriate.

*The New York Class*

39.     Plaintiff Riedel seeks to represent a class consisting of the following subclass (the "New York Class"):

> All New York residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

*The New Jersey Class*

40.     Plaintiff Shen seeks to represent a class consisting of the following subclass (the "New Jersey Class"):

> All New Jersey residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

41.     The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

42.     Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

43.     <u>Numerosity:</u> The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through the appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

44.   <u>Common Questions Predominate</u>: Questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Classes because each Class member's claim derives from the same false, misleading and deceptive misconduct. The common questions of law and fact involved predominate over any questions affecting only Plaintiffs or individual Class members. Thus, proof of a common or single set of facts will establish the right of each member of the Classes to recover. Among the questions of law and fact common to the Classes are:

i.   Whether Defendant labeled, packaged, marketed, advertised and/or sold Products to Plaintiffs and Class members, using false, misleading and/or deceptive packaging and labeling;

ii.   Whether Defendant's actions constitute violations of the consumer protection laws of New York and New Jersey;

iii.   Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of Products;

iv.   Whether Defendant's labeling, packaging, marketing, advertising and/or selling of Products constituted an unfair, unlawful or fraudulent practice;

v.   Whether any of the Products during the relevant statutory period were packaged in over-sized containers with excessive empty space;

vi.   Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

vii.   Whether the members of the Class have sustained damages as a result of Defendant's wrongful conduct;

viii.   The appropriate measure of damages and/or other relief;

14

ix.  Whether Defendant has been unjustly enriched by their scheme of using false, misleading and/or deceptive labeling, packaging or misrepresentations, and;

x.  Whether Defendant should be enjoined from continuing its unlawful practices.

45.    Typicality: Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs purchased the Products during the Class Period and sustained similar injuries arising out of Defendant's conduct in violation of the consumer protection laws of New York and New Jersey. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

46.    Adequacy: Plaintiffs will fairly and adequately represent and pursue the interests of the Class and have retained competent counsel experienced in prosecuting nationwide class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their

fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

47.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendant would likely unfairly receive millions of dollars or more in improper profits.

48.     The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

49.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

50.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

51.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

52.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices, including advertising, marketing, distributing, and/or selling consistently and intentionally short-weighted Products, make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT) (Brought on Behalf of the New York Class)

53.     Plaintiff Riedel repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

54.     Plaintiff Riedel brings this claim individually and on behalf of the other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General  Business Law ("NY GBL") § 349.

55.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

56.     Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance.  ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim."  *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

57.     The foregoing deceptive acts and practices were directed at consumers.

58.     Defendant should be enjoined from packaging its Products in containers that are made, formed, or filled as to be misleading as described above pursuant to NY GBL § 349.

59.     A consumer has standing to seek injunctive relief even where they are not likely to repurchase the product. *See Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090 (E.D.N.Y. 2014).

60.     Plaintiff Riedel, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)
### (Brought on Behalf of the New York Class)

61.     Plaintiff Riedel repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

62.     Plaintiff Riedel brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

63.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in her own name to enjoin such unlawful act or practice, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

18

64.     "There is no requirement that the plaintiff show specific dollar injury, or to obtain injunctive relief that there even be pecuniary injury at all. Nor is there any requirement that the deceptive practice or false advertising be intentional or even reckless or amount to fraud." N.Y. Gen. Bus. L. § 349, Practice Commentaries. "Nor does plaintiff have to prove reliance upon defendant's deceptive practices." *BNI New York Ltd. v. DeSanto*, 675 N.Y.S.2d 753 at 755 (1998). *See also, Small v. Lorillard Tobacco Company*, 677 N.Y.S.2d 518, 519 (1st Dept. 1998) (Section 349 "does not require proof of justifiable reliance").

65.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by representing that its Products contained more in the packaging than is actually included.

66.     The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products in containers made, formed or filled as to be misleading are unfair, deceptive and misleading and are in violation of the NY GBL § 349  in that said Products are misbranded.

67.     The foregoing deceptive acts and practices were directed at consumers.

68.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the quantities of the Products in that they misled Plaintiff and the other Class members into believing that they were buying more than what they actually received.

69.     Plaintiff Riedel and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade acts.  Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff Riedel and the other Class members suffered monetary losses associated with the purchase of Products, i.e., receiving less than the capacity of the

packaging due to excessive empty space in the Products. In order for Plaintiff Riedel and Class members to be made whole, they need to receive either the price premium paid for the Products or a refund of the purchase price of the Products equal to the percentage of non-functional empty space in the Products.

**COUNT III**

**NEW JERSEY CONSUMER FRAUD ACT,**
**N.J.S.A.56:8-1,** *et seq.*
**(Brought on Behalf of the New Jersey Class)**

70.     Plaintiff Yang Shen realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

71.     Plaintiff Yang Shen brings this claim individually and on behalf of the other members of the New Jersey Class for violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

72.     At all relevant times, Defendant was and is a "person," as defined by N.J.S.A. 56:8-1(d).

73.     At all relevant times, Defendant's Products constituted "merchandise," as defined by N.J.S.A. 56:8-1(c).

74.     At all relevant times, Defendant's manufacturing, marketing, advertising, sales and/or distribution of the Products at issue met the definition of "advertisement" set forth by N.J.S.A. 56:8-1(a).

75.     At all relevant times, Defendant's manufacturing, marketing, advertising, sales and/or distribution of the Products at issue met the definition of "sale" set forth by N.J.S.A. 56:8-1(e).

76.     N.J.S.A. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission, …is declared to be an unlawful practice…"

77.     Defendant has made and continue to make deceptive, false and misleading statements concerning the packaging of their Products, namely manufacturing, selling, marketing, packaging and advertising the Products, as alleged herein. Defendant falsely represented that the Products contain much more liquid detergent than they actually do.

78.     As described in detail above, Defendant uniformly misrepresented to Plaintiff Yang Shen and each member of the New Jersey Class, by means of their advertising, marketing and other promotional materials, and on the Products' labeling and packaging, the Products' contents.

79.     Defendant have therefore engaged in practices which are unconscionable, deceptive and fraudulent and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission in their manufacturing, advertising, marketing, selling and distribution of the Products. Defendant have therefore violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

80.     As a direct and proximate result of Defendant's improper conduct, Plaintiff Yang Shen and other members of the New Jersey Class have suffered damages and ascertainable losses of moneys and/or property, by paying more for the Products than they would have, and/or by purchasing the Products which they would not have purchased, if the benefits of taking such Products had not been misrepresented, in amounts to be determined at trial.

21

**COUNT IV**

**NEGLIGENT MISREPRESENTATION**
**(Brought on Behalf of the Nationwide Class, or Alternatively,**
**on Behalf of the New York and New Jersey Classes)**

81.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein and further allege the following:

82.     Defendant, directly or through its agents and employees, made false representations, concealment and nondisclosures to Plaintiffs and members of the Class. Defendant, through its deceptive packaging of the Products, made uniform representations regarding the Products.

83.     Defendant, as the manufacturer, packager, labeler and initial seller of the Products purchased by the Plaintiffs, had a duty to disclose the true nature of the Products and not sell the Products in over-sized containers with excessive empty space. Defendant had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs; Defendant actively concealed material facts from the Plaintiffs and Defendant made partial representations that are misleading because some other material fact has not been disclosed. Defendant's failure to disclose the information it had a duty to disclose constitutes material misrepresentations and materially misleading omissions which misled the Plaintiffs who relied on Defendant in this regard to disclose all material facts accurately and truthfully and fully.

84.     Plaintiffs and members of the Class reasonably relied on Defendant's representation that its Products contain more product than actually packaged.

85.     In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth

above.  The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

86.     Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

87.     Plaintiffs and members of the Class would have acted differently had they not been misled – i.e. they would not have paid money for the Products in the first place.

88.     Defendant has a duty to correct the misinformation it disseminated through the deceptive packaging of the Products. By not informing Plaintiffs and members of the Class, Defendant breached its duty. Defendant also profited financially as a result of this breach.

89.     Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendant when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

90.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, and any interest that would have been accrued on all those monies, all in an amount to be determined according to proof at time of trial.

91.     Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and members of the Class.

92.     Plaintiffs and members of the Class are entitled to damages, including punitive damages.

## COUNT V

### UNJUST ENRICHMENT
**(Brought on Behalf of the Nationwide Class, or Alternatively,
on Behalf of the New York and New Jersey Classes)**

93.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein and further allege the following:

94.     As a result of Defendant's deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of Products, Defendant was enriched, at the expense of and members of the Class, through the payment of the purchase price for Defendant's Products.

95.     Plaintiffs and members of the Class conferred a benefit on Defendant through purchasing the Products, and Defendant had knowledge of this benefit and voluntarily accepted and retained the benefits conferred on it.

96.     Defendant will be unjustly enriched if it is allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendant and for which Defendant has been unjustly enriched.

97.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from Plaintiffs, and all others similarly situated, in light of the fact that the volume of the Products purchased by Plaintiffs and the Class, was not what Defendant purported it to be by its labeling and packaging. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs, and all others similarly situated, for selling their Products in packaging resulting in slack-fill. In order for Plaintiffs and Class members to be made whole, they need to receive either the price

premium paid for the Products or a refund of the purchase price of the Products equal to the percentage of empty space in the Products.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, prays for relief and judgment against Defendant as follows:

(A)     For an Order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

(B)     For an Order declaring the Defendant's conduct violates the statutes referenced herein;

(C)     For an Order finding in favor of Plaintiffs and members of the Class;

(D)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(E)     For prejudgment interest on all amounts awarded;

(F)     For an Order of restitution and all other forms of equitable monetary relief;

(G)     For injunctive relief to repackage the Products without non-functional slack-fill as pleaded or as the Court may deem proper;

(H)     For an Order awarding Plaintiffs and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

(I)     For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: April 27, 2016

**Respectfully submitted,**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

/s/ C.K. Lee
BY:  C.K. Lee, Esq.